THE PEOPLE *ex rel.* THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff-Appellant, v. FRANK CATHEY *et al.*, Defendants-Appellees.

Fifth District    No. 5—97—0981

Opinion filed February 24, 1999.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Laura Wunder, Assistant Attorney General, of counsel), for appellant.

Ted E. Barylske, of Alton, for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, the People of the State of Illinois *ex rel*. the Department of Children and Family Services (the Department), appeals from an or-

der of the circuit court of Madison County dismissing the Department's complaint against defendants, Frank Cathey and Norma Cathey. The Department filed its complaint against defendants seeking partial reimbursement for money it expended on behalf of defendants' daughter, E.C., a minor, after the Department received temporary custody of E.C. On appeal, the Department contends that (1) the trial court erred in dismissing the complaint because section 1 and section 9.1 of the Children and Family Services Act (the Act) (20 ILCS 505/1, 9.1 (West 1994)) provide that parents are liable to the Department for payments representing sums expended for their children's care and training in accordance with the parents' ability to pay, and (2) defendants waived any challenge they may have had by failing to challenge the Department's determination as to the amounts defendants owed, when they chose not to request a hearing within 30 days or to pursue the remedies specified under the administrative review law. We reverse and remand with directions.

## FACTS

On October 24, 1994, E.C. was placed in the "temporary custody and guardianship" of the Department by an "Order As To Shelter Care." The order indicates, *inter alia*, that (1) there was a finding of probable cause to believe that E.C. was abused and neglected, (2) a shelter care hearing was waived by the parents, and (3) while the parents made no admissions as to the allegations in the petition and, in fact, denied the allegations, they agreed to the entry of the order. A hearing on the merits was scheduled within 30 days; however, that hearing did not occur, and the cause was continued.

The record indicates that defendants were notified by letter, dated June 21, 1995, that pursuant to section 9.1 of the Act (20 ILCS 505/9.1 (West 1994)), they owed $80 per month, effective December 1, 1994, for the cost of the care of E.C. Defendants did not respond to this letter. On February 14, 1997, the State of Illinois, on behalf of the Department, filed a complaint against defendants for unpaid assessments that amounted to $1,977.11 through November 1996. On March 11, 1997, defendants filed a motion to dismiss on the basis that since the Department had not yet made a final adjudication of abuse and neglect, E.C. could not be receiving "care and training" from the Department. Defendants asserted that the Department's designation as temporary custodian, by virtue of a shelter care hearing, was insufficient to create an obligation to pay for E.C.'s care.

On April 11, 1997, the Department filed its motion to strike defendants' motion to dismiss. The Department alleged that defendants' obligation to pay for E.C.'s care was not dependent upon a final

adjudication of abuse and neglect. Rather, the shelter care order, agreed to by defendants, was sufficient to create an obligation to pay. The Department also pointed out that defendants did not appeal from the June 21, 1995, notice within 30 days.

On August 8, 1997, the trial court dismissed the cause without prejudice and allowed the Department 30 days to amend its complaint. The Department chose to stand on its original complaint and moved for the entry of a final order. On October 24, 1997, the trial court entered a final order. The Department now appeals.

## ANALYSIS

■ While defendants' motion to dismiss failed to indicate under which section of the Code of Civil Procedure (the Code) dismissal was sought, the parties now agree that dismissal was sought pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 1996)). In reviewing the dismissal of a complaint pursuant to section 2—615 of the Code, we must determine whether the complaint, when viewed in the light most favorable to the plaintiff, alleges facts sufficient to establish a cause of action. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 566 N.E.2d 1365 (1991). In making this determination, we take as true all well-pleaded facts in the complaint (142 Ill. 2d at 46, 566 N.E.2d at 1366) and reasonable inferences drawn from those facts. *Stinson v. Physicians Immediate Care, Ltd.*, 269 Ill. App. 3d 659, 646 N.E.2d 930 (1995). The trial court's dismissal of a complaint under section 2—615 is subject to *de novo* review. 269 Ill. App. 3d at 661-62, 646 N.E.2d at 932.

The Department asserts that the trial court erred in dismissing its complaint against defendants because defendants had a duty under section 1 and section 9.1 of the Act to provide reimbursement for the care the Department provided to defendants' daughter. Defendants respond that the Department cannot assess support payments under section 9.1 of the Act against parents whose child is in temporary shelter care under the Juvenile Court Act of 1987 (705 ILCS 405/1—1 *et seq.* (West 1996)). Defendants refer us to numerous sections of not only the Juvenile Court Act but also the Children and Family Services Act, as well as the Illinois Administrative Code, Title 89, chapter 111, part 352, in support of their contention that there is no provision which requires parents to be financially responsible for their children's care when the children are placed with the Department pursuant to a shelter care hearing. Additionally, defendants assert that even if section 9.1 of the Act does authorize the Department to make support determinations against these parents, such legislation is in violation of the due process provisions of both the United States and Illinois Constitutions. See U.S. Const., amend. V; Ill. Const. 1970, art. I, § 2.

We disagree with defendants and find that the trial court erred in dismissing the Department's complaint.

■ Section 9.1 of the Act provides, in pertinent part:

"§ 9.1. The parents or guardians of the estates of children accepted for care and training under the Juvenile Court Act or the Juvenile Court Act of 1987, or through a voluntary placement agreement with the parents or guardians[,] shall be liable for the payment to the Department, or to a licensed or approved child care facility designated by the Department[,] of sums representing charges for the care and training of those children at a rate to be determined by the Department. The Department shall establish a standard by which shall be measured the ability of parents or guardians to pay for the care and training of their children, and [the Department] shall implement the standard by rules governing its application. The standard and the rules shall take into account ability to pay as measured by annual income and family size. Medical or other treatment provided on behalf of the family may also be taken into account in determining ability to pay if the Department concludes that such treatment is appropriate." 20 ILCS 505/9.1 (West 1994).

Defendants contend that the phrase "accepted for care and training under the Juvenile Court Act or the Juvenile Court Act of 1987" has a specific technical meaning whereby only children who have been adjudicated abused, neglected, delinquent, dependent, or addicted can be children accepted for care and training under the act. Again, we disagree with defendants.

■ The cardinal rule of statutory construction is to ascertain and give effect to the intent of the General Assembly. *In re Application for Judgment & Sale by the County Treasurer & ex officio County Collector*, 276 Ill. App. 3d 1084, 659 N.E.2d 457 (1995); *Tucker v. Illinois Power Co.*, 232 Ill. App. 3d 15, 597 N.E.2d 220 (1992). Legislative intent is best determined from the language of the statute (*County of Hamilton v. Department of Revenue*, 279 Ill. App. 3d 639, 665 N.E.2d 567 (1996)), and such language will be given its plain and ordinary meaning. *In re Incorporation of the Village of Godfrey*, 243 Ill. App. 3d 915, 612 N.E.2d 870 (1993). Where the language of a statute is not ambiguous, it will be enforced as enacted without resort to other aids. *Scott v. Archer-Daniels-Midland Co.*, 194 Ill. App. 3d 510, 551 N.E.2d 776 (1990).

■ The language of section 9.1 of the Act is clear and unambiguous and does not carve out an exception for those children who are under the Department's care by virtue of a shelter care hearing. Moreover, section 1 of the Act specifically states:

"It is the intent of this Act that the child welfare services herein

provided do not release the parent or guardian from responsibility to provide for the financial support of their children." 20 ILCS 505/1 (West 1994).

Section 1 further provides:

"This primary and continuing responsibility applies whether the family unit of parents and children remain [*sic*] intact and reside [*sic*] in a common household or whether the unit has been *temporarily* broken by reason of child abuse, neglect, dependency or other reasons necessitating state care and training." (Emphasis added.) 20 ILCS 505/1 (West 1994).

In the instant case, the Department received temporary custody of E.C. after the trial court entered a finding of probable cause that E.C. was abused or neglected. Defendants waived a shelter care hearing. There is no question but that they agreed to the temporary placement of E.C. with the Department.

■ It is well settled that in construing statutory language, we are to assume that the General Assembly did not intend to produce an absurd or unjust result. *Cummins v. Country Mutual Insurance Co.*, 178 Ill. 2d 474, 479, 687 N.E.2d 1021, 1024 (1997). We believe that it would be absurd to expect the Department to pay for the care of E.C. without requiring defendants to contribute to such care based upon their ability to pay. The statement of the purpose of the Act specifically provides that the child welfare services provided under the Act do not release the parents from the financial responsibility to provide for their children and that such responsibility continues even if the family unit is "temporarily broken by reason of child abuse [or] neglect." 20 ILCS 505/1 (West 1994). Shelter care is temporary custody. See 705 ILCS 405/2—7(2) (West 1996). Moreover, our supreme court has noted that "[a] parent's duty to support his or her minor child is among the oldest principles of law." *In re Marriage of Lappe*, 176 Ill. 2d 414, 431, 680 N.E.2d 380, 389 (1997).

We also find it noteworthy that the Department did not seek reimbursement from the date on which E.C. was placed in temporary custody, October 24, 1994. Instead, the Department's complaint sought reimbursement beginning on December 1, 1994. Defendants could not reasonably expect the Department to continue to provide care for E.C. without seeking some type of reimbursement from them. The language of both section 1 and section 9.1 of the Act, along with the parents' reasonable expectations, indicates that parents can be assessed for the temporary care of their child after a shelter care hearing and prior to a hearing on the merits, when the hearing is continued as it was here. Accordingly, we are unconvinced by defendants' argument that to allow such reimbursement would violate the due process clause of either the United States Constitution or the Illinois Constitution.

Because of our determination on the first issue raised by the Department, we need not address the second issue.

For the foregoing reasons, the order of the circuit court of Madison County is reversed, and the cause is remanded with directions to reinstate the complaint against defendants.

Reversed and remanded with directions.

CHAPMAN and KUEHN, JJ., concur.